UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN DOES 1-570,

Petitioners,

v.

GEORGE W. BUSH, *et al.*,

Respondents.

Civil Action No. 05–313 (CKK)

**MEMORANDUM OPINION**
(October 31, 2006)

On February 10, 2005, [1] Petitioners' Motion for Leave to Proceed with a Petition for a Writ of Habeas Corpus Using Fictitious Names (hereinafter, "Motion to Proceed Using Fictitious Names") was filed in the United States District Court for the District of Columbia by counsel from the Center for Constitutional Rights and Mayer, Brown, Rowe & Maw LLP, and signed specifically by Barbara Olshansky from the Center for Constitutional Rights (hereinafter, collectively "Counsel"). On the same day, Judge Ricardo Urbina, acting on behalf of Chief Judge Thomas Hogan, issued an [2] Order Granting Petitioners' Motion to Proceed with a Petition for a Writ of Habeas Corpus Using Fictitious Names. Accordingly, a [3] Petition for Writ of Habeas Corpus naming "John Does 1-570" as "petitioners," was filed by Counsel in this matter on February 10, 2005, on behalf of "every detainee being held at Guantanamo whom the United States has not officially confirmed to be in its custody . . . and who has not yet filed a petition for a writ of habeas corpus." Pet. ¶ 8.

On March 17, 2005, Respondents filed a [10] Motion to Dismiss the instant matter and additionally opposed the initial [1] Motion to Proceed Using Fictitious Names (which was

procedurally granted *ex parte* on the day of its filing). Because Counsel does not have standing to file a habeas petition on behalf of unspecified *John Does*, the Court shall GRANT Respondents' [10] Motion to Dismiss on the grounds that Counsel's Petition must be construed pursuant to "next friend" jurisprudence, the requirements for which cannot be met by Counsel. As such, the Court need not consider Respondents' request, also lodged via its Motion to Dismiss, that the Court reconsider the [2] Order granting Petitioners' Motion to Proceed Using Fictitious Names.

## I: BACKGROUND

As an initial matter, the Court notes that it is unclear why the instant Petition is still pending before the Court at all. At the time the Petition was filed, Counsel claimed that "Respondents have provided no official confirmation of the identities of the Petitioners." Pet. ¶ 19. On May 15, 2006, the government released a "List of Individuals Detained by the Department of Defense at Guantanamo Bay, Cuba from January 2002 through May 15, 2006," presently available at www.dod.mil/pubs/foi/detainees/detaineesFOIArelease15May2006.pdf. The aforementioned list includes the names, ISNs, citizenship, places of birth, and dates of birth (when known) of 759 detainees. *Id.* By Counsel's own representation, upon release of such names and identifying information, Counsel should have voluntarily dismissed the instant lawsuit, as Counsel stated that distinct, individualized petitions related to the factual predicate behind each detainee's particular circumstances would then be filed by any detainees accepting representation by Counsel (or other counsel) when such information became available. *See* Mot. to Proceed Using Fictitious Names at 3 n.3 ("As CCR and its partner organizations receive requests for assistance of counsel on behalf of detainees known to be at Guantanamo, those

groups plan to ensure that habeas corpus petitions using the detainees' true names are filed in a timely manner on their behalf. . . . Once a petition is filed in a detainee's true name, that person will no longer be a petitioner in the above captioned matter."). The Court notes that between February 19, 2002, to October 20, 2006, 625 detainees had filed petitions either directly, through counsel, or through next friends in a total of 243 cases before the United States District Court for the District of Columbia. *See attached* Declaration of Joe Burgess, Operations Analyst/CM-ECF Coordinator, United States District Court for the District of Columbia (Oct. 30, 2006). Of the 625 detainees, 54 had filed petitions *pro se*. *Id*. Of the 54 detainees who had filed petitions *pro se*, all have since been appointed counsel. *Id*. The Court further notes that as of October 2006, Counsel has already filed several separate and distinct named petitions on behalf of previously "unidentified" petitioners allegedly subsumed into the instant matter, effectively mooting the instant Petition on behalf of *John Does*. *See also* Mot. to Proceed Using Fictitious Names at 12 n.9 ("Once counsel obtains the names and identifying information of the detainees, counsel will consult with each detainee, explain his right to file a habeas petition based on his individual circumstances, and determine whether the detainee wants to proceed with the habeas action. At that point, *counsel will pair the detainees who want to proceed with attorneys who will represent them on a pro bono basis and who will file claims on behalf of those individuals using the individuals' real names*. In the unlikely event that any detainee does not wish to file a habeas petition, counsel will promptly notify the Government and the Court." (emphasis added)). Nonetheless, the Court shall consider Respondents' claims regarding Counsel's lack of standing and dismiss the instant matter on this basis.

Counsel's Petition, bringing claims before the Court pursuant to 28 U.S.C. § 2241, states

in relevant part that "Petitioners include every detainee being held at Guantanamo whom the United States has not officially confirmed to be in its custody by disclosing his or her identity and who has not yet filed a petition for a writ of habeas corpus." Pet. ¶ 8. The Petition further states that "[e]ach Petitioner acts on his own behalf." *Id.* ¶ 1. The Petition also states that "Upon information and belief, each Petitioner desires to pursue in United States courts every available legal challenge to the lawfulness of his detention." *Id.* ¶ 25. The Petition also states that "[u]nder the unique and extraordinary circumstances of this case, the factual allegations made in paragraphs 13-15, 20, 23, 25, 29-30, 32, 34-35, 38, and 61 that are made upon information and belief are made pursuant to Rule 11(b)(3) of the Federal Rules of Civil Procedure on the basis that those allegations 'are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.' Fed. R. Civ. P. 11(b)(3)." Pet. ¶ 73. Counsel requests various forms of relief on behalf of *John Does*, asking in part that the Court "Order Respondents to release Petitioners' names and identifying information, including their nationalities, countries of origin, date and place of interdiction, and next of kin information, under such terms and conditions as will enable Petitioners to secure counsel in order to vindicate their legal right to challenge their unlawful detention." Pet. at 19.

On March 17, 2005, Respondents filed a [10] Motion to Dismiss Petition in this matter, additionally opposing the initial [1] Motion to Proceed Using Fictitious Names (which was procedurally granted *ex parte* on the day of its filing). On April 18, 2005, Counsel filed an [15] Opposition to Respondents' Motion to Dismiss. On May 6, 2005, Respondents filed their Reply. This case has been stayed pending various appellate decisions. The Court lifts the stay in order to resolve the standing question at issue.

4

## II: LEGAL STANDARD & DISCUSSION

*A.     Legal Standard for a Motion to Dismiss a Habeas Petition*

"The custodian's response to a habeas corpus petition is not like a motion to dismiss. The procedure for responding to the application for a writ of habeas corpus . . . is set forth in the habeas corpus statutes and, under Rule 81(a)(2), takes precedence over the Federal Rules." *Browder v. Ill. Dep't of Corrections*, 434 U.S. 257, 269 n.14, 98 S. Ct. 556, 54 L. Ed. 2d 521 (1978). Furthermore, "the Federal Rules of Civil Procedure apply in habeas proceedings only 'to the extent that the practice in such proceedings is not set forth in statutes of the United States and has heretofore conformed to the practice in civil actions.'" *Browder*, 434 U.S. at 269, 98 S. Ct. 556. However, pursuant to 28 U.S.C. § 2243, "A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, *unless it appears from the application that the applicant or person detained is not entitled thereto*." 28 U.S.C. § 2243 (emphasis added). "The person to whom the writ or order is directed shall make a return certifying the true cause of the detention. . . . Unless the application for the writ and the return present only issues of law the person to whom the writ is directed shall be required to produce at the hearing the body of the person detained." *Id.* Therefore, pursuant to 28 U.S.C. § 2243, the Court may independently determine as a matter of law that a habeas petition does not merit either a response from the government or the production of the petitioner before it.

However, various Courts have noted that motions to dismiss have been and may be employed in habeas proceedings. *See White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989) ("[Petitioner] acknowledges that responding to a habeas petition with a motion to dismiss is

common practice. *See, e.g., Murray v. Carrier*, 477 U.S. 478, 483, 106 S. Ct. 2639, 2643, 91 L. Ed. 2d 397 (1986)"); *Ukawabutu v. Morton*, 997 F. Supp. 605, 608-09 (D.N.J. 1998). The Court further notes that Respondents have previously relied on the Federal Rules of Civil Procedure in filing dispositive motions in similar detainee habeas proceedings. *See In re Guantanamo Detainee Cases*, 355 F. Supp. 2d 443, 453 (D.D.C. 2005) ("The respondents contend that none of these provisions constitutes a valid basis for any of the petitioners' claims and seek dismissal of all counts as a matter of law under Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted. In the alternative, the respondents seek a judgment based on the pleadings pursuant to Fed. R. Civ. P. 12(c)."). *See also Rasul v. Bush*, 215 F. Supp. 2d 55, 61 (D.D.C. 2002), *aff'd, Al Odah v. United States*, 321 F.3d 1134 (D.C. Cir. 2003), *rev'd on other grounds, Rasul v. Bush*, 542 U.S. 466, 124 S. Ct. 2686, 159 L. Ed. 2d 548 (2004) (applying Federal Rule of Civil Procedure 12(b)(1) to the government's motion to dismiss a pending habeas petition on jurisdictional grounds).

Assuming *arguendo* that the Court would appropriately apply the more deferential legal standard applied to motions to dismiss for lack of jurisdiction under Federal Rules of Civil Procedure 12(b)(1), dismissal based on Counsel's lack of standing would still be warranted in the instant case. A court may appropriately dispose of a case under 12(b)(1) for lack of standing, and may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted); *see also Artis v. Greenspan*, 223 F. Supp. 2d 149, 152 (D.D.C. 2002) ("A court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of venue,

personal jurisdiction or subject-matter jurisdiction."); *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999) ("where a document is referred to in the complaint and is central to plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment.") (citing *Greenberg v. The Life Ins. Co. of Va.*, 177 F.3d 507, 515 (6th Cir. 1999)). "In 12(b)(1) proceedings, it has long been accepted that the judiciary may make 'appropriate inquiry' beyond the pleadings to 'satisfy itself on authority to entertain the case.'" *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987) (internal citation omitted). At the stage in litigation when dismissal is sought, the plaintiff's complaint must be construed liberally, and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the alleged facts. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). In spite of the favorable inferences that a plaintiff receives on a motion to dismiss, it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence. *Am. Farm Bureau v. Envtl. Prot. Agency*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000).

The Court notes that there is no factual dispute in this case that Counsel filed the Petition on behalf of nameless *John Does* for whom Counsel had neither received any actual request for representation, nor their consent to file the Petition. Both Counsel and Respondents understand that the nature of the Petition filed was such that neither the identities of the actual detainees purported to be represented by Counsel, nor their actual interest in having Counsel filing the instant Petition represent them, were known. With this jointly held factual understanding in mind, the Court finds as a matter of law that Counsel does not have standing to act on behalf of *John Does* in this matter, because Counsel cannot properly assert claims as "next friends" of unidentified detainees with unknown interests and preferences who have not consented to the

filing of the Petition.

>   B.  *The Court shall grant Respondents' Motion to Dismiss, as Counsel does not have standing to proceed on behalf of John Does*

"It is well-established . . . that before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue. Article III, of course, gives the federal courts jurisdiction over only 'cases and controversies,' and the doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process." *Whitmore v. Arkansas,* 495 U.S. 149, 154-55, 110 S. Ct. 1717, 109 L. Ed. 2d 135 (1990). "It is a long-settled principle that standing cannot be 'inferred argumentatively from averments in the pleadings,' but rather 'must affirmatively appear in the record.'" *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231, 110 S. Ct. 596, 107 L. Ed. 2d 603 (1990) (citations omitted).

Under the federal habeas statute, a habeas petition must be "signed and verified by the person for whose relief it is intended or by someone acting in his behalf." 28 U.S.C. § 2242. Because the Petition was not actually submitted by the detainees themselves despite the fact that Counsel's Petition, "specifically alleges that each Petitioner acts on his own behalf," Counsel's Opp'n at 30 (quotation omitted), in order to establish standing, Counsel would have to satisfy "next friend" status under *Whitmore*. The "next friend" criteria were intended by the United States Supreme Court to apply to an entity which "simply pursues the cause on behalf of the detained person, who remains the real party in interest." *Whitmore*, 495 U.S. at 163, 110 S. Ct. 1717. Although Counsel protests application of the "next friend" criteria to it, it provides no other appropriate framework under which the Court can assess Counsel's standing to proceed in

the stead of *John Does* themselves. Indeed, the Ninth Circuit, in a case presenting a similar posture to the instant matter in which a group of clergy, professors, and other individuals attempted to proceed on behalf of detainees in Guantanamo Bay, dismissed the matter for lack of "next friend" standing. *See Coalition of Clergy, Lawyers & Professors v. Bush*, 310 F.3d 1153 (9th Cir. 2002) (discussed *infra* at 13). *See also Hamdi v. Rumsfeld*, 294 F.3d 598, 602-03 (4th Cir. 2002) ("In order to have standing to sue in federal court, a plaintiff must show that he has suffered an injury in fact that is fairly traceable to the challenged action of the defendant, and that is likely to be redressed by a favorable decision. . . . Nevertheless, a person who does not satisfy Article III's standing requirements may still proceed in federal court if he meets the criteria to serve as next friend of someone who does."). The Fourth Circuit has described the "next friend" doctrine as "find[ing] statutory expression in 28 U.S.C. § 2242, which states that a habeas petition may be brought 'by the person for whose relief it is intended or by someone acting in his behalf.'" *Id.* at 603.

Under *Whitmore*, "[d]ecisions applying the habeas corpus statute have adhered to at least two firmly rooted prerequisites for 'next friend' standing." *Whitmore*, 495 U.S. at 163, 110 S. Ct. 1717. The first prerequisite is "an adequate explanation–such as inaccessibility, mental incompetence, or other disability–why the real party in interest cannot appear on his own behalf to prosecute the action." *Id.* (citations omitted). The second prerequisite is that "the 'next friend' must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate, and it has been further suggested that a 'next friend' must have some significant relationship with the real party in interest." *Id.* at 163-164 (citations omitted). This doctrine was intended to prevent individuals with only a "generalized interest in constitutional governance"

from "circumvent[ing] the jurisdictional limits of Art. III simply by assuming the mantle of 'next friend.'" *Id.* at 164. The Court also notes that "[t]he burden is on the 'next friend' clearly to establish the propriety of his status and thereby justify the jurisdiction of the court." *Id.* (citations omitted). The Court will not make a finding pursuant to the first prong of *Whitmore* in this matter regarding the ability of detainees to file petitions on their own behalf, as this issue is more appropriately addressed in "next friend" litigation identifying specific petitioners (rather than *John Does* in the abstract). However, the Court again notes that as of October 20, 2006, 625 detainees had filed petitions in a total of 243 cases before the United States District Court for the District of Columbia. *See attached* Declaration of Joe Burgess, Operations Analyst/CM-ECF Coordinator, United States District Court for the District of Columbia (Oct. 30, 2006). Of the 625 detainees, 54 had filed petitions *pro se*. *Id.* Of the 54 detainees who filed petitions *pro se*, all have been appointed counsel. *Id.* Such figures suggest that absent circumstances unique to particular detainees, detainees have been able to file petitions before the Court in large numbers despite Counsel's claims to the contrary. The Court also notes that various procedures related to detainees' access to counsel were set forth in the amended protective order issued by Judge Joyce Hens Green in *In re Guantanamo Bay Detainee Cases*, 344 F. Supp. 2d 174 (D.D.C. 2004), as supplemented by later orders entered by Judge Green as applied in *Al Odah v. United States*, 02-CV-828 (CKK), on November 10, 2004 (docket entry [144]) and on December 13, 2004 (docket entry [167]).

Counsel fails to satisfy the requirements of "next friend" standing pursuant to the second prong of *Whitmore* because Counsel cannot demonstrate that Counsel is dedicated to the best interests of unspecified individuals based only on speculation as to unidentified detainees'

intentions or wishes to litigate in United States courts. Furthermore, neither Counsel nor the Court has any basis on which to conclude that the unidentified *John Does* want legal representation as a general matter or more specifically by Counsel in the instant matter. Even though precedent in this circuit does not speak to whether or not the Court should impute a "significant relationship" requirement to the second prong of *Whitmore*, Counsel would fail to meet the requirements of said prong in either case.

While this circuit has not addressed whether there must be "some significant relationship" between a "next friend" and the individual on whose behalf the "next friend" seeks to act, a number of circuits have recognized that such a showing must be made under the second prong of *Whitmore*. *See, e.g., Hamdi*, 294 F.3d at 604 ("[W]e conclude that the significant-relationship inquiry is in fact an important requirement for next friend standing."); *Enk v. Brophy*, 124 F.3d 893, 897 (7th Cir. 1997) (Posner, C.J.); *Amerson v. Iowa*, 59 F.3d 92, 93 n.3 (8th Cir. 1995), *cert. denied*, 516 U.S. 1080, 116 S. Ct. 791, 133 L. Ed. 2d 740 (1996). The Eleventh Circuit, however, determined that a court should consider whether or not a proposed "next friend" has a "significant relationship" with the detained individual as a consideration (rather than a separate requirement) when determining whether or not a proposed "next friend" is dedicated to a detainee's best interests. *See Sanchez-Velasco v. Dep't of Corrections*, 287 F.3d 1015, 1026-27 (11th Cir. 2002) ("[W]e have previously indicated that ["some significant relationship"] may not be an additional, independent requirement but instead may be one means by which the would-be next friend can show true dedication to the best interests of the person on whose behalf he seeks to litigate."). However, in *Sanchez-Velasco*, the Court nonetheless determined that an attorney who had never represented, met, spoken to, or even attempted to speak with a particular prisoner

"had no relationship at all with him, much less a significant one," *id.* at 1027, and could show in no other way that he was truly dedicated to the prisoner's best interests within the meaning of the second prong of *Whitmore*, further noting that "[t]here is no pragmatic exception to the requirements of next-friend standing." *Id.* at 1028.

Counsel in this matter attempts to litigate a case brought on behalf of unspecified individuals whose names Counsel at filing did not know and about whose interests Counsel can only speculate. *See* Pet., Ex. 1 (Olshansky Decl.) ¶¶ 6, 11; Respdts' Mot. Dismiss at 5. Although Counsel contends that "the Government's suggestion that the hundreds of Petitioners in this case all *prefer* to remain imprisoned indefinitely . . . is plain ludicrous," Counsel's Opp'n at 18 (emphasis in original), Counsel makes unsubstantiated assumptions regarding the connection between detainees' imprisonment itself and particular detainees' desire to contest their imprisonment before United States courts via Counsel. While it may be fair to assume that the detainees want to be released from detention in Guantanamo Bay, there may be reasons why detainees may not want to file habeas petitions as a vehicle for accomplishing this purpose–for example, certain detainees may mistrust the United States judicial system and choose to avoid participating in such proceedings altogether, may desire that the fact of and circumstances surrounding their confinement be addressed through other channels, or may want to avoid a judicial determination about the merits of their case at a particular juncture in that detainee's military-based proceedings. The Court agrees with Respondents that "[c]onsidering that Ms. Olshansky admits that she has not been able to contact every detainee at Guantantamo Bay, or a close family member of every detainee, *see* [Pet.] ¶¶ 6, 11, the source of her 'good faith basis' that every detainee desires to avail himself of his right to seek habeas relief through the American

legal system is merely her clearly subjective belief." Respdts' Mot. Dismiss at 19 n.13. The Court further notes that not all detainees may want to be represented by the Counsel in this case.

In *Coalition of Clergy, Lawyers & Professors v. Bush*, which presents circumstances remarkably similar to the instant case, a group of clergy, lawyers and professors wanted to represent Guantanamo Bay detainees without their knowledge, but the court assessed that "the Coalition has not demonstrated any relationship with the detainees," much less a relationship significant enough to qualify for "next friend" standing. *Coalition of Clergy*, 310 F.3d at 1162. "At best, the Coalition can only assert 'a generalized interest in constitutional governance.'" *Id.* at 1163 (quoting *Whitmore*, 495 U.S. at 164, 110 S. Ct. 1717). The Ninth Circuit thus held that the Coalition lacked standing to pursue a petition on behalf of the detainees. Here, Counsel attempts to distinguish itself from the Coalition in *Coalition of Clergy*, arguing that "plaintiff Coalition was an ad-hoc, self-appointed group, and the Ninth Circuit emphasized in that case that the record was devoid of any effort . . . to even *communicate* with the detainees." Counsel Opp'n at 35 (quotations omitted). Counsel emphasizes that it not only made repeated efforts to communicate with detainees, but also that "the record establishes that the undersigned counsel have strong and longstanding relationships" with individual detainees and detainees *en masse*. *Id.* at 36. However, the Court cannot accept the proposition that Counsel's relationship with detainees it actually represents can be applied to hundreds of unspecified detainees which it only purports to represent.

Counsel also cannot point to any case in any context in which counsel has been allowed to pursue habeas (or other) relief on behalf of a non-class of unidentified plaintiffs or petitioners where plaintiffs' actual identity is unknown by counsel representing such plaintiffs at the time of

-13-

filing. Counsel's reliance on *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971), and other cases in which *defendants* are unknown parties, bear no relevance to the circumstances of the instant case.[1] Thus, the only framework that the Court may rely upon, as did the Ninth Circuit, in determining whether Counsel has standing to proceed on behalf of unknown *John Does* petitioners, is the "next friend" framework recognized by the Supreme Court when a habeas petition is filed on behalf of a detained individual. Counsel's further attempts to rely on *Lucky v. Calderon*, 86 F.3d 923 (9th Cir. 1996), are unavailing. In *Lucky*, counsel was allowed to sign a petition for habeas corpus in order to stay her client's execution because her client refused to see her or sign any papers. Even assuming that the Court found the reasoning relied upon in *Lucky*—which was devoid of references to case law or statutes—to be persuasive (which it does not), *Lucky* does not support Counsel's claim that Counsel can proceed without consent from the unidentified detainees Counsel purports to represent in this case. In *Lucky*, a client-attorney relationship already existed between counsel and Mr. Lucky, whereas Counsel filed the instant Petition in an attempt to establish such a relationship with 570 unidentified detainees using this matter as a vehicle to determine the identities of the individuals "represented." Such an extension of the "next friend" doctrine would be unprecedented, and indeed improper. As the Supreme Court noted in *Faretta v. California*, "An unwanted counsel 'represents' the defendant only through a tenuous and unacceptable legal fiction." *Faretta v. California*, 422 U.S. 806, 821, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975).

---

[1] In fact, Counsel's only "argument" to this effect is that "because of the extraordinary circumstances presented here—where the Respondents know the *Petitioners*' real names but have refused to disclose those names to Petitioners' counsel—cases allowing plaintiffs to identify 'John Doe' defendants are analogous and should apply." Counsel's Opp'n at 17 n.8.

Counsel's position is predicated on the assumption that all 570 *John Does* would desire representation specifically by Counsel once made aware of Counsel's "representation" on their behalf.

### III: CONCLUSION

"[L]imitations on the 'next friend' doctrine are driven by the recognition that '[i]t was not intended that the writ of habeas corpus should be availed of, as a matter of course, by intruders or invited meddlers, styling themselves as next friends.'" *Whitmore*, 495 U.S. at 164, 110 S. Ct. 1717 (citation omitted). "'However friendly he may be to the doomed man and sympathetic for his situation; however concerned he may be lest unconstitutional laws be enforced, and however laudable such sentiments are, the grievance they suffer and feel is not special enough to furnish a cause of action in a case like this.'" *Id.* at 166 (quoting *Gusman v. Marrero,* 180 U.S. 81, 87, 21 S. Ct. 293, 295, 45 L. Ed. 436 (1901)). Regardless of Counsel's intentions, a determination that Counsel is acting in the best interests of 570 unidentified detainees cannot be made where there is no relationship between Counsel and the unidentified detainees, no indication of any intention of such detainees to be represented by counsel in general, and no indication of any intention by such detainees to be represented by this Counsel attempting to pursue litigation on their behalf. As such, Counsel does not have standing to pursue habeas relief on behalf of *John Does* in this case, and the Court shall dismiss the instant matter on this basis. Because no specific detainees were appropriately represented in this action by Counsel, this ruling does not preclude Counsel on *res judicata* grounds (or counsel more generally) from filing separate petitions on behalf of previously unrepresented detainees in petitions unrelated to the instant dismissed case, reflecting the circumstances and facts relevant to each specific petitioner (though the Court does not speak

to the general or case-specific jurisdictional propriety of such actions in light of recent legislative action and judicial holdings).

Based on the aforementioned reasoning, the Court shall grant Respondents' Motion to Dismiss and dismiss this matter in its entirety. An Order accompanies this Memorandum Opinion.

Date:   October 31, 2006

<div style="text-align: right;">

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge

</div>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN DOES 1-570,

Petitioners,

v.

GEORGE W. BUSH, *et al.*,

Respondents.

Civil Action No. 05–313 (CKK)

## DECLARATION OF JOE BURGESS

Pursuant to 28 U.S.C. § 1746, I, Joe Burgess, Operations Analyst/CM-ECF Coordinator for the United States District Court for the District of Columbia, state under penalty of perjury that the foregoing is true and correct to the best of my knowledge:

(1)  I examined the United States District Court for the District of Columbia docket regarding Guantanamo Bay cases per the request of Judge Colleen Kollar-Kotelly and assembled statistics using both a manual counting of cases and examination of each docket sheet to ascertain the data in conjunction with information provided to me by Greg Hughes, Chief Deputy of Operations.

(2)  Between February 19, 2002, and October 20, 2006, 243 cases were filed with the instant court seeking relief on behalf of 625 specific detainees.

(3)  54 of the aforementioned 243 cases were filed by *pro se* petitioners.

(4)  Of the 54 cases filed by *pro se* petitioners, counsel was appointed in all of said cases.

Executed on October 30, 2006

_____
Joe Burgess
Operations Analyst/CM-ECF Coordinator